Good morning, your honors. Charles Rankin for Mr. Middleton. With the court's permission, I intend to address the first issue, that is whether the lower court abused its discretion in admitting the testimony of a government expert witness, Dr. Hopper. This is a case Are you going to reserve any time for rebuttal? No, your honor. Okay, so please proceed. In this case, the defense was that the complainant, Ms. Rush, had lack of credibility, and the government's response to that was to propose that Dr. Hopper be allowed to testify under the guise of explaining to the jury the neurobiology of trauma. To be sure, if you read Dr. Hopper's report, which is in the record, or you listen to part of his testimony, that is what would ordinarily be beyond the kin of an average juror or lawyers or judges. But the government used that as a vehicle to essentially explain to the jury why the complainant shouldn't be believed, why her credibility would be bolstered. And the guise of that was to say that a person experiencing trauma focuses on the central details and may not remember the peripheral details. That is exactly the playing field. Didn't the judge, when instructing the jury, give the typical instruction about credibility, weight of the evidence pertaining to experts? Of course, of course he did. So notwithstanding that, you would still say it bolstered everything? Absolutely. I mean, this court has recognized and affirmed convictions where a myriad of experts have been permitted to testify, from drug organization experts to, in Pirish last year, Your Honor wrote a decision affirming a conviction where an agent was permitted to testify as an expert on the self-sex trafficking organization. And those generally... How are you distinguishing those? So those are generally described as describing the methods of the criminal organization, whether it be the mafia, the drugs, sex trafficking. This was not... This is different. This is talking about... How is this not the scientific method of how the mind functions? Well, the doctor talked about that, but this court has repeatedly said you have to be very careful in admitting expert testimony so that it does not invade the jury's exclusive function to determine credibility. And that is exactly what happened here in the motion in limine, in the argument before the district judge on whether to admit this testimony. And finally, in closing argument, the government used Dr. Hopper's testimony in exactly the way that the defense lawyer had submitted it. The prosecutor argued, and Adrian might not have gotten every detail exactly accurate. You saw the long timeline, the multiple places that they went to. But to Adrian, these were peripheral details like Dr. Hopper instructed you and taught you the other day. He told you that when the brain is under Mr. Rankin, were you able to find any other trial courts that have admitted this kind of evidence across the country? No, Your Honor. The only case I saw, I cited it in the brief, it's an unpublished Fourth Circuit case where they said that this has to be excluded. It was a defense proposal to put on a witness to testify about the credibility of a victim in that case. That's the only case. But it's the opposite scenario. Yes. The district court excluded it. The Court of Appeals affirmed it, but said we can't allow this. What if, in this case, you were the one who would propose an expert witness somehow to attack the victim or something? That still wouldn't be admissible, just like it wasn't for the government? It would not be. It would not be. I mean, just take a step out and think of another hypothetical. A bank teller undergoes a tremendously traumatic experience when he or she is robbed, or a carjacking victim, or a kidnapping victim, or many other traumatic experiences. And we don't let an expert come in and testify that the teller's description may have varied when she first talked to the police, when she went into the grand jury, when she's being prepped by the government, when she testifies. But that's the difference here, right? Did the expert really say that this witness's testimony varied and you can overlook that because? Or wasn't it a step further back, where this is how the mind works, and then it was up to the jury to determine does that apply here or not? Well, the evidence was quite clear that the expert had not talked to was not opining about her credibility. But I think you can see from the testimony of the expert, especially the central versus peripheral, and the way the government used it in closing, that that was the crux of the message that the doctor conveyed. The jury did not need to know how the brain functions in order to assess this person's credibility. Jurors do that day in and day out in all manner of things. The argument is that jurors don't do it correctly because they don't understand the scientific mechanisms of the brain. Well, let's back up for a second. Take a child sexual abuse prosecution. Often there's a long delay, years, in coming forth with the allegation. And courts, this court and other courts, have blessed or affirmed efforts to explain why that delay. And I'm not contesting that. What I am contesting is in a case where there are multiple, multiple inconsistencies and attacks by the defense on the credibility of the complainant, why is an expert allowed to opine in just the way that the prosecutor used it in closing argument? I mean, this was a case where... How do you deal with, how do you deal with the alzahnke, which has, there was, as I understand in that case, there was some expert testimony regarding behavioral reactions of a victim. And I think the court said that that was permissible, where, you know, in light of the instruction given to the jury that the jury was free to reject the expert's testimony, which seems similar to what happened here. So how do you deal with that case? Well, I mean, I think that was talking about a particular aspect of the victim's question, where a jury wouldn't... This was an enslavement case, I guess is the best way to put it. And there was evidence that the defense had elicited that there were numerous times when the enslaved person had been out on her own. And so the court allowed a victimologist, a witness, to testify that people can become so dependent on their oppressor that they don't flee. But I think that was the gist of the testimony in that case. And I don't think that goes to the victim's credibility. It's not that... I mean, Ms. Rush told her story in all kinds of different ways over all kinds of interviews and grand jury testimony. Well, why wouldn't that go to a victim's credibility? Because, I mean, the defense theory is that if she was really enslaved, then she would have fled. And so you have an expert opining that the reason people don't flee is because of, like, learned helplessness. So, I mean, so how is that different from what we have here? Well, let me just talk to you for a moment about the different aspects of the defense's attack or the defense. She was with her best friend. They were both heroin users. And the best friend called Thatcher, a co-defendant. And Thatcher came over with Middleton and Jones. So the first sex act, Julie, the best friend, says that was consensual. She was engaging in sex with a customer in order to get heroin. There was no coercion involved, according to Julie. Rush said that there was. During the end of the first date in Julie's hotel room, the complainant texts Julie and says, L-M-F-A-O, laughing my effing ass off. Over the course of these two days, there were two encounters with the police, and Rush did not ask the police for any assistance. Please continue. But the jury heard all of that. Well, yes, but the jury heard Dr. Hopper, who, you know, brings, as the court has said repeatedly, a government expert brings an aura of very impressive credentials, very... Well, let me ask you this. We've allowed expert testimony in some case. So the question for me is, where do we draw the line? Well, I think you draw the line when the expert testimony is admitted in order to sway the jury's assessment of the witness's credibility. And here, they cross that line. The court, as long ago as Rosario, in 1995, said you cannot invade the exclusive province of the jury to do that. And here, they, I don't want to be disrespectful, but they use Dr. Hopper's expertise as a vehicle to excuse her inconsistencies. I still don't understand how that's different from the enslavement case. Well, I think that was a very discreet... She didn't escape enslavement because, according to the defense or the prosecution, she couldn't because of this learned... Psychological dependence. Psychological dependence. And so that was admitted. So, I mean, how do you distinguish that from the so-called victim in this case who didn't report because her brain was functioning? As I look at the court's case law, it seems to focus on, is there anything about this case that would not be apparent to a jury? So, why would the enslavement case, why would that woman not leave? Well, that's not necessarily in the kin of a layperson, so... So, most people don't have experience with slavery? Is that what makes it different? I think it's, I mean, it's the same thing with the delayed disclosure in a child sexual assault case. You get a particular thing that merits expert testimony. Here, the expert testimony was simply offered to explain away the inconsistencies. And I suggest that that was improper. The issue was preserved. The government does not claim it as harmless error. So, I think the case... Let me ask you one thing. Your challenge is based on Federal Rule of Evidence 702, correct? Yes, Your Honor. You're not challenging, I don't see it anywhere, Rule 403? No. That wasn't raised. And would you agree that before doing the 702 analysis, you'd still have to do a Dobert analysis, and this is relevant and reliable. Then you go to 702 analysis, correct? Yes, Your Honor. Okay. Any other questions? Okay. Thank you, counsel. Thank you very much, Your Honors. Good morning. May it please the Court. Brian Klein, Board for the United States. Your Honors, the District Court soundly exercised its discretion in permitting the government's expert witness to testify regarding the neurobiology of trauma and its impact on memory. Judge Levy, in his thorough and thoughtful ruling in this case... Would such an expert be allowed in a bank robbery case where a teller had a gun pointed at their head? Well, Your Honor, I think the teller case and the carjacking cases I think are distinguishable from this. And I'm not saying that the government couldn't offer an expert in those cases under the right circumstances, but this is a particular area of case law, sex trafficking cases, sexual abuse cases, where the defense tactic is to attack the credibility of the victim and claim that their inconsistencies... That's in every criminal case where the victim testifies, they're attacking the credibility of the witness. I'm sorry, I didn't hear your question. That's in every criminal case where a so-called victim testifies, the witness's credibility is always going to be attacked. Well, but there's a body of science that addresses specifically with respect to sexual abuse victims because of the rape trauma that they've encountered. And in this case, that was what the doctor's testimony was limited to, was his training, his experience, his research on how the brain is impacted by the specific trauma of sexual abuse. And so it was the only thing the court has to concern itself with. So where's the line drawing? Well, the line drawing I think is consistent with this court's other cases as the court was discussing with opposing counsel. I don't think there's any daylight between this case and the Alzonqui case and the Solar Montalvo case and the Perez case. All of those cases, Judge Thompson, as I think your question's recognized, ultimately assist the jury. The expert's testimony assists the jury in assessing credibility. That happened in Alzonqui when the expert testified to common behavioral responses of abuse victims in cases involving involuntary servitude. It certainly happened in the Perez case from 2025. So what you're saying then is that the testimony was in fact to do precisely what your opposing counsel says is not permissible? No. That's not the government's argument. The government's argument is that the court properly allowed the expert to testify to general scientific principles that the jury would not be aware of. But you said that was important because the strategy here is to undermine the credibility of the victim. So that seems to suggest to me that the reason that you're offering this is in fact to bolster the credibility of the victim. No. The reason the government was offering this is because the defense had indicated prior to trial and certainly in its opening statement that its entire defense was, this victim can't remember any details of what happened and therefore the jury should not believe her. And the government had a right to offer an expert to rebut that and help the jury understand how the brain functions in a case of trauma like this. And to, these are, they don't, the defense doesn't dispute that these are, that the science is legitimate. They didn't challenge the expert on that, that it's readily accepted in the scientific community. And Judge Levy found, and I think it's a supportable conclusion, that this kind of scientific knowledge about what happens in the prefrontal cortex and the hippocampus during an attack or a trauma is beyond the ken of the average juror. And that the government therefore had a right to offer this in a very limited fashion just to help the jury understand how memory works in cases like this. I guess what I'm struggling with is the line between the science and the credibility determination is a really, really fine one in this case, isn't it? I really don't think it's any more of a fine line than the court's other cases. Like in Perez, which was, the expert testified about common ways that sex traffickers maintain control over their victims. This court said that the experts, among other things, the expert's testimony may have helped the jury assess the victim's credibility, which Perez sought to undermine throughout the trial by pointing out the inconsistencies in her testimony and by intimating that she would not have remained with the defendant if he had mistreated her as she claimed. I don't think it's really, the function of the evidence here really isn't any different than what the court affirmed in that case. And not to mention the court, again, the court's ruling was carefully cabined. The court also instructed the jury that they could reject the testimony of the expert. The court instructed the jury that the jury was to determine credibility of all witnesses. And the government itself in opening said that it's for the jury to determine the credibility of witnesses. And the point in closing that opposing counsel refers to doesn't say anything, doesn't suggest to the jury that there was any vouching by the witness. It just refers them to the expert's testimony about the science. And so for all of those reasons, I think Judge Levy, he has broad discretion to admit expert testimony. I would say that his ruling in this case is supported by this court's case law and this court should affirm. Counsel, let me ask you, Mr. Rankin mentioned his challenge on appeal is based on Rule 702. But I see, and you mentioned this in your brief, that Judge Levy below did also consider Rule 403. If we were to consider the Rule 403, because it's before us, you would still, you know, you know, there would still be an affirmance in your view? Yes, Your Honor. If they're no longer relying on that as a basis for reversal, then it's... But what if we were to look at it in the big overall picture? Yeah, I think that Judge Levy's ruling on Rule 403 should also be affirmed. Again, he found that the expert's testimony was relevant and its probative value would not be substantially outweighed. And if I'm not mistaken, he discarded part of the testimony and kept part, right? He limited the actual testimony that went in using 403, am I correct? Right, correct. He specifically allowed only two discrete areas for the expert to testify, that being brain-based responses to sexual assault and testimony about how the impact of sexual assault, what the impact of sexual assault on memory. And so it was a very carefully caverned ruling and it sound on both Rule 702 and 403. Thank you. Okay, so the next time the has an expert witness who wants to testify about how the brain functions during other kinds of traumas, your response would be, what, we have to do it on a just case-by-case basis or Daubert takes care of that or what? I think both of those things are correct, whether the science backs it up and whether it's appropriate in that particular case. But I don't think the court has to make any line rule about where this kind of evidence. It's peculiarly important in a case like this, I would say. Okay, any other questions? Anything else, counsel? Oh no, thank you, your honor. Okay, thank you very much. Okay, so let me ask unrelated to the merits of the case, Mr. Rankin, I've been informed by the clerk that this is your last CJA case? It is, your honor. Well, I just want to, on behalf of myself and my colleagues, and I think I speak for my colleagues who are not here and past colleagues, thank you for almost 23 years of service on the CJA committee and on the panel, and I know you also worked in other court committees, so thanks to you for that. Well, thank you, your honor. It's always a privilege to come here and present an argument, and sometimes I read the decision and wonder how you got it so on. Hopefully I won't have that experience in a couple months. Thank you. You're excused. Thank you, counsel. That concludes argument in this case.